**Schree HICKS, Angelique Giddings, Sandra White, Lea M. Millner, Willie Mae Lewis, Jordan White and Nathaniel White, Plaintiffs,**

v.

**Robert ARTHUR, Marsha O'Hara, Robert Fishman, Sheryl Moyer, and Resources For Human Development, Inc., Defendants.**

**No. 93–CV–3160.**

United States District Court, E.D. Pennsylvania.

Jan. 31, 1994.

---

Don Bailey, Bailey, Hardy & Alm, Harrisburg, PA, for plaintiffs.

Joan R. Sheak, Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Allentown, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

The instant civil action is presently before the Court for disposition of the motion of Defendants Robert Arthur, Marsha O'Hara, Robert Fishman, Sheryl Moyer and Resources For Human Development, Inc. ("RHD") to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction over certain claims. The Court must also address the Defendants' motion for a more definite statement of those claims which are not dismissed. Jurisdiction is premised on a federal question pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 for pendant state claims. For the reasons set forth below, the motion to dismiss is granted in part and denied in part, and the motion for a more definite statement is denied.

## BACKGROUND

Briefly stated, the pertinent facts underlying this case are as follows. Plaintiffs, Schree Hicks, Sandra White, Angelique Giddings, Lea M. Millner and Willie Mae Lewis, are adult Black American female citizens and have been employed by Defendant Resources for Human Development, Inc., hereinafter RHD. In addition, Jordan White, an infant son of Sandra White, and Nathaniel White, the parent and guardian of Jordan White, are also plaintiffs in this action. Defendant, RHD, is a corporation serving a variety of human social needs with offices in Philadelphia, Pennsylvania. The individual defendants, Robert Arthur, Marsha O'Hara, Robert Fishman and Sheryl Moyer, are management employees of RHD.

The Complaint, filed on June 11, 1993, alleges that Hicks, Giddings, White, Millner and Lewis were terminated from their employment at RHD on account of their race, and also, in certain cases, because of pregnancy or sexual orientation. The causes of action underlying the Complaint include violations of the Civil Rights Act of 1991, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5. Moreover, the employee-plaintiffs seek compensatory damages for wrongful discharge,

intentional infliction of emotional distress and for injuries suffered under Article 1, Section 1 of the Pennsylvania Constitution. Also, Plaintiffs, Sandra White, Jordan White and Nathaniel White claim negligence on the part of RHD, Moyer and Fishman for the alleged wrongful discharge of Sandra White which caused the premature birth of and subsequent physical and mental injuries to Jordan White.

By way of the motion to dismiss which is presently before this Court, Defendants argue that the eight counts in the Complaint fail to state a claim upon which relief may be granted or fail to establish subject matter jurisdiction. In addition, Defendants request this Court to direct Plaintiffs to provide a more definite statement of those claims which remain. Plaintiffs respond that the Complaint does allege violations of Title VII and § 1981 and that the state claims are pled with factual and legal sufficiency.

### DISCUSSION

I. *Standards Governing Motions to Dismiss*

It is well-settled that the issue of legal sufficiency of a claim may be raised by the filing of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or by a motion for a more definite statement under Federal Rule of Civil Procedure 12(e). In determining whether to grant a 12(b)(6) motion, the court must accept as true all the matters pleaded in the Complaint and all reasonable inferences that can be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3rd Cir.1990). Unless it appears beyond a doubt that the claimant can prove no facts which would support the relief requested, dismissal is inappropriate. *Jones v. Arbor,* 820 F.Supp. 205, 206 (E.D.Pa.1993). While the plaintiff is not required to set out in detail the facts upon which a claim is based, he must allege sufficient facts and must, either through direct allegations or inferences, state all the material elements for recovery under the relevant legal theory. Charles A. Wright &

Arthur Miller, 5 Federal Practice and Procedure, § 1216 at 154–59 (1990); *Toberman v. Copas,* 800 F.Supp. 1239, 1243 (M.D.Pa.1992).

II. *Section 1981*

Section 1981 provides that all persons within the jurisdiction of the United States are guaranteed the same freedom enjoyed by white citizens of the United States, including the freedom to make and enforce contracts. 42 U.S.C. § 1981. This protection applies only to discriminatory conduct "at the initial formation" of a contract or "which impairs the right to enforce contract obligations through legal process." *Patterson v. McLean Credit Union,* 491 U.S. 164, 179–80, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989). However, the Civil Rights Act of 1991 extended the protection of § 1981 to post-formation conduct, including the termination of contracts. *Jones,* 820 F.Supp. at 206. It should be noted that the majority of the courts in this Circuit which have considered the question have held that the additional protection provided by the Civil Rights Act of 1991 does not apply retroactively to cases which seek redress under § 1981 for conduct occurring prior to its enactment date of November 21, 1991. *Jones,* 820 F.Supp. at 207–08; *Thompson v. Prudential Ins. Co. of America,* 795 F.Supp. 1337, 1349 (D.N.J. 1992); *Rogers v. Mount Union Borough by Zook,* 816 F.Supp. 308, 313 (M.D.Pa.1993). Therefore, termination of an employment contract for reasons of racial discrimination prior to November 21, 1991 does not establish a cognizable § 1981 claim. *Jones,* 820 F.Supp. at 206.

A § 1981 cause of action in the employment context which is based on racial discrimination must set forth facts to establish that the allegedly disparate treatment was the result of "intentional" or "purposeful" discrimination. *Weldon v. Kraft,* 896 F.2d 793, 796 (3rd Cir.1990); *Armstrong v. School District of Philadelphia,* 597 F.Supp. 1309, 1312 (E.D.Pa.1984). A § 1981 plaintiff cannot satisfy the "purposeful" criterion with "vague and conclusory allegations" in the complaint, *Armstrong,* 597 F.Supp. at 1312; and "absent direct evidence," intent may be

proven through the framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Weldon,* 896 F.2d at 796; *Lewis v. University of Pittsburgh,* 725 F.2d 910, 914 (3rd Cir. 1983).

Under the *McDonnell* framework, the employee must plead and prove a prima facie case of unlawful discrimination. *Weldon,* 896 F.2d at 793 (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 250–252, 101 S.Ct. 1089, 1092–93, 67 L.Ed.2d 207 (1981)). A prima facie case may be established by showing that the employee (1) belongs to a racial minority; (2) was qualified for the job from which he was discharged; and that (3) others not in the protected class were treated more favorably. *Weldon,* 896 F.2d at 797. However, a prima facie case is not limited to one set of criteria and may be established in other ways. *Lewis,* 725 F.2d at 914 n. 4. The Third Circuit has in fact admonished courts to avoid mechanical applications of the standard. *EEOC v. Metal Serv. Co.,* 892 F.2d 341, 348 (3rd Cir.1990).

In addition, in order to find an individual, such as a director, officer or an agent of a corporation, liable under § 1981, a plaintiff must establish that the individual intentionally interfered with the plaintiff's right to make and enforce a contract or that the individual "authorized, directed or participated" in the alleged discrimination. *Al–Khazraji v. Saint Francis College,* 784 F.2d 505, 518 (3rd Cir.1986). Regardless of whether he acted on his own account or on the corporation's behalf, an individual may be found liable for the injuries caused by his violation of the plaintiff's civil rights. *Id.*

In Count I, Plaintiff Schree Hicks alleges that the Defendants, RHD, O'Hara and Fishman discriminated against her in denying her application to be promoted because she was black. Hicks was a Unit Director and allegedly was a qualified and capable employee. In late 1991, Hicks applied for an Associate Director position, which had a higher pay and more prestige. Hicks alleges that RHD denied her promotion and eventually fired her on March 21, 1992, because she was black. O'Hara and Fishman allegedly promoted and effectuated RHD's discriminatory policies. Hicks also claims that RHD excludes blacks from meaningful and executive positions, such that most of the top management positions are filled by whites. With these allegations accepted as true, we find that Hicks has pleaded a prima facie case of discrimination against RHD, O'Hara and Fishman under the *McDonnell* framework and, therefore, her § 1981 claim will not be dismissed at this time.

In Count II, Plaintiff Angelique Giddings alleges that she was fired by Fishman and RHD on November 13, 1992 "under false pretenses by the defendants Robert Arthur and RHD" because she was a black pregnant female in violation of § 1981. This count alleges that Giddings was proficient and productive in carrying out her responsibilities and that the Defendants harassed and intentionally intimidated her because of her race and pregnancy in contrast to the support and help the Defendants provided to white pregnant females. Viewing these allegations in the light most favorable to the Plaintiff, this Court finds them to be equivalent to the averments required under the *McDonnell* framework and thus Ms. Gidding's § 1981 claims against RHD and Robert Arthur will not be dismissed either.

Plaintiff, Sandra White, in Count III alleges that Defendants Fishman, Moyer and RHD violated her § 1981 civil rights by harassing her because she was a black pregnant employee. She also alleges that, although she performed her duties in a proficient and productive manner, RHD demoted and subsequently fired her on February 24, 1992 because she was black. In contrast, Sandra White alleges, white pregnant women were treated more favorably and were encouraged and assisted by Defendants. Thus, Sandra White has established a prima facie case of unlawful discrimination against RHD and her claims against that defendant will likewise not be dismissed at this juncture. Plaintiff White, however, has failed to plead any facts which show that the individual Defendants, Fishman and Moyer, intentionally interfered with the employment contract or personally authorized, directed or participated in the company's alleged discrimination

against her. As a result, Sandra White's § 1981 claim against the individual Defendants will be dismissed.

In Count IV, Plaintiff Lea M. Miller attempts to establish a prima facie case of racial discrimination under § 1981. However, Millner alleges that her unlawful discrimination occurred on April 11, 1991 which precedes the date of the enactment of the Civil Rights Act of 1991. As stated above, § 1981 will not be applied retroactively regarding post-formation conduct. Therefore, Millner's entire § 1981 claim will be dismissed for failure to state a cognizable claim.

Plaintiff, Willie Mae Lewis, in Count V against Defendants RHD and Fishman, alleges that she was replaced and ultimately terminated from her job as a psychological consultant at RHD on December 22, 1992 because she was a black female. Lewis alleges that until her termination, she performed her duties in an exemplary manner but was replaced by a less qualified white male. Thus, Lewis has sufficiently alleged a prima facie case of unlawful discrimination under § 1981 and her claim will not be dismissed, except as to the individual Defendant Fishman because Lewis has failed to plead intentional interference or personal involvement by Fishman.[1]

## III. *Title VII*

Title VII provides a more expansive reach than § 1981, making it unlawful for an employer to refuse to hire or discharge any individual, or to discriminate against any individual with regards to his compensation, terms, conditions or privileges of employment, because of the individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2(a)(1). In Title VII, "Congress set up an elaborate administrative procedure ... [and] [o]nly after these procedures have been exhausted, and the plaintiff has obtained a right to sue letter from the EEOC, may she bring a Title VII action in court." *Patterson v. McLean Credit Union*, 491 U.S. 164, 180–181, 109 S.Ct. 2363, 2374–

2375, 105 L.Ed.2d 132 (1989). In fact, a federal court lacks subject matter jurisdiction to hear a Title VII claim unless a claim has been previously filed with the EEOC. *Trevino–Barton v. Pittsburgh Nat'l Bank*, 919 F.2d 874, 878 (3rd Cir.1990). A Title VII plaintiff is required to file charges with the EEOC no later than 180 days after the alleged act of discrimination, 42 U.S.C. § 2000e–5(e), and if the EEOC issues a "right to sue" letter, then the plaintiff must bring a civil action against her employer within 90 days of receipt of the letter. 42 U.S.C. § 2000e–5(f)(1). Failure to file within this time frame operates as a bar to relief in federal courts on the merits. *Knoll v. Springfield Township School District*, 699 F.2d 137, 145 (3rd Cir.1983).

Plaintiffs, Schree Hicks and Sandra White, in Counts I and III, respectively, allege that their civil rights were violated under Title VII. Hicks does not allege that she has filed a claim with the EEOC or that she has received a "right to sue" letter. Therefore, because she has not exhausted her administrative remedies, Hicks' Title VII claim against RHD, O'Hara and Fishman will be dismissed. Sandra White's Title VII claim, on the other hand, will not be dismissed because she alleges in her complaint that she filed her claim with the EEOC and has received a "right to sue" letter. However, Sandra White has failed to plead the time frame in which she filed her claim with the EEOC and received her "right to sue" letter. In addition, the complaint fails to allege the parties authorized to be sued under the "right to sue" letter. Therefore, Sandra White's Title VII claim will be dismissed with leave to amend Count III with the particulars concerning the administrative proceedings.

## IV. *Wrongful Discharge*

Under Pennsylvania law, the general rule regarding termination of employment allows employers to terminate at-will employees with or without cause. *Freeman v. McKellar*, 795 F.Supp. 733, 741

---

1. Plaintiff Lewis alleges only that "the defendant Fishman explained to her that the reason for her dismissal was due to the fact that an unidentified board member felt that she was not sociable. (See, ¶ 74 of Plaintiff's Complaint).

(E.D.Pa.1992); *Paralegal v. Lawyer,* 783 F.Supp. 230, 230 (E.D.Pa.1992); *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346, 348 (1990). Common law principles do establish an exception to the general rule when an employee has been terminated in violation of a "significant, clearly mandated public policy." *Brown v. St. Luke's Hospital,* 816 F.Supp. 342, 344 (E.D.Pa.1993); *Freeman,* 795 F.Supp. at 741. An employee has a rather narrowly construed cause of action for wrongful discharge "where some recognized facet of public policy is threatened." *Geary v. U.S. Steel Corp.,* 456 Pa. 171, 319 A.2d 174, 180 (1974). In addition, a cause of action for wrongful discharge may be maintained when there is no available statutory remedy for an aggrieved employee. *Freeman,* 795 F.Supp. at 742. However, if the legislature has enacted laws which precisely protect the interests of employees that the plaintiff alleges have been violated, then the plaintiff's cause of action cannot be maintained. *Id.*

■ In Count VII, the employee-Plaintiffs allege that they were wrongfully discharged based on racial discrimination, specifically because they were black. In addition, the Complaint alleges that Plaintiffs White, Giddings and Millner were also discharged because of their pregnancies, and Hicks was also discharged because of her sexual orientation. The employee-Plaintiffs maintain that Defendants have violated a public policy against racial discrimination in the workplace by the alleged wrongful discharges. The protection of employees from racial discrimination is without doubt a clearly mandated public policy. However, claims of racial discrimination in the workplace cannot be heard as claims of wrongful discharge through the public policy exception where there are statutory remedies available which Plaintiffs may pursue, namely under the Pennsylvania Human Relations Act, Section 1981 and Title VII of the Civil Rights Acts. The employee-Plaintiffs have, in fact, pursued their statutory remedies under federal law. With respect to the employee-Plaintiffs' allegations regarding wrongful discharge based on sexual orientation and pregnancy, Plaintiffs have failed to establish a clearly mandated public policy which would provide

an exception to the general at-will employment doctrine. Because the employee-Plaintiffs cannot pursue their wrongful discharge claims as public policy exceptions to the general at-will employment doctrine and have statutory remedies they can pursue regarding wrongful discharge based on racial discrimination, their claims for wrongful discharge shall be dismissed.

## V. *Intentional Infliction of Emotional Distress*

■ The Pennsylvania's Workmen's Compensation Act ("WCA") is the exclusive remedy for injuries arising in the course of an employee's employment. *Price v. Philadelphia Electric Co.,* 790 F.Supp. 97, 99 (E.D.Pa.1992); *Danese v. Morrison–Knudsen/Slattery,* 784 F.Supp. 228, 229 (E.D.Pa.), *aff'd,* 975 F.2d 1549 (3rd Cir.1992); *Santiago v. Pennsylvania Nat'l Mutual Casualty Ins. Co.,* 418 Pa.Super. 178, 613 A.2d 1235, 1239 (1992). The Pennsylvania Supreme Court has, in fact, held that even intentional torts committed by the employer during the course of employment fall within the exclusive coverage of the WCA. *Danese,* 784 F.Supp. at 229. However, personally motivated intentional acts of third persons do not fall within the exclusive coverage of the WCA. 77 Pa.S.A. § 411(1). *See Price,* 790 F.Supp. at 99–100; *Dunn v. Warhol,* 778 F.Supp. 242, 244 (E.D.Pa.1991). In *Price,* allowing a cause of action for intentional infliction of emotional distress against an employer for racial harassment, the court stated that the relevant inquiry for determining whether the third-party exception is applicable is the motivation or intent of the third party. *Price,* 790 F.Supp. at 100. "To fit within this exception, the third party's act must have been motivated by his [personal] animosity against the injured employee. If the third party would have attacked a different person in the same position as the injured employee, the attack falls outside the 'third-party attack' exception." *Shaffer v. Procter & Gamble,* 412 Pa.Super. 630, 604 A.2d 289, 292 (1992). In *Price,* the court held that the allegations in the complaint inferred that the conduct was a result of

personal animosity of fellow employees toward the plaintiff. *Price,* 790 F.Supp. at 100.

■ The employee-Plaintiffs in this case base their intentional infliction of emotional distress claims on the alleged harassment and intimidation by the defendants. The basic motivation alleged was racial discrimination. The employee-Plaintiffs have failed to establish personal animosity on the part of the third parties. The alleged "conspiracy" was to exclude blacks, as a class, from leadership or executive positions. The individual defendants are alleged to have promoted the policies, but nowhere are there any averments that they themselves had a personal animosity towards the particular employees in this case. The alleged discrimination is against black workers in general and the fact that there are five black employee-Plaintiffs named in this suit confirms the notion that the third-parties' motivation was not personal. The employee-Plaintiffs have failed to establish the applicability of the third-party exception and, therefore, the intentional infliction of emotional distress claim is barred by the WCA and will be dismissed.

## VI. *Negligence*

■ In addition to the afore-mentioned claims, at Count VI of the plaintiffs' complaint Sandra, Jordan, and Nathaniel White have endeavored to state a claim against RHD, Moyer and Fishman under a negligence theory. In furtherance of this cause of action, plaintiffs allege that as a result of the said defendants' "wrong and intentional actions ... directed at Sandra White" which they "knew or should have known ... would cause great anxiety and fear and could result in life and health threatening reactions in a pregnant women (sic) ... the plaintiff Jordan White was born with permanent mental and physical injuries ..."

■ It is axiomatic that to state a cause of action under Pennsylvania law for negligence, the basic elements of that tort must be pled. Those elements are: (1) the existence of a duty or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure on the part of the actor to conform

to the required standard; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another. *Fennell v. Nationwide Mutual Fire Insurance Company,* 412 Pa.Super. 534, 603 A.2d 1064, 1066–1067 (1992); *Casey v. Geiger,* 346 Pa.Super. 279, 499 A.2d 606, 612 (1985), *allocatur denied,* 516 Pa. 638, 533 A.2d 710 (1987). In reviewing the complaint in the case at bar, we observe that it is devoid of allegations concerning the existence of a duty owed by the defendants to the plaintiffs and that there does not exist a reasonably close causal connection between the defendants' alleged actions and the mental and physical injuries sustained by the plaintiffs. Indeed, it appears to this court that the plaintiffs are trying to plead a claim for "negligent termination of employment." Such a cause of action, however, does not exist under the law of Pennsylvania. *See: Gaiardo v. Ethyl Corp.,* 697 F.Supp. 1377, 1384–1385 (M.D.Pa.1986). What's more, even if the plaintiffs had succeeded in pleading a negligence claim against these defendants and as discussed above, such a cause of action would be barred by the provisions of the Pennsylvania Workmen's Compensation Act. *See e.g.:* 77 P.S. § 481. Count VI shall therefore be dismissed.

## VII. *State Constitutional Claims*

■ In their complaint, the employee-Plaintiffs also allege that Defendants deprived them of their rights under Article 1, Section 1 of the Pennsylvania Constitution. Article 1, Section 1 is intended to provide individuals with protection from the Commonwealth's interference with an individual's rights. Although Plaintiffs attempt to establish state action because of RHD's alleged use of "taxpayers money," this does not rise to the level of state action. Plaintiffs have not pled any facts which suggest interference by the Commonwealth of Pennslvania with the individual rights of Plaintiffs. Therefore, Plaintiffs' direct state constitutional claims will be dismissed.

## VIII. *Standards Governing Motions for a More Definite Statement*

■ A defendant can request a more definite statement of the complaint in order

to enable him to prepare his answer. A court may grant a Rule 12(e) motion when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." 5A Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure, Civil 2d,* § 1376 (1990); *Blue Line Coal Co., Inc. v. Equibank,* 683 F.Supp. 493, 498 (E.D.Pa.1988). A pleading must be sufficient enough to enable the court to make out the potential viable legal theories upon which the complaint is based. 5A Wright & Miller, § 1376 at 577. However, if the granting of a Rule 12(e) motion increases the time and effort to refine the pleadings without circumscribing the scope of discovery or defining the issues, then such a motion is not appropriate. *Id.* at 578.

In this case, the issues have already been defined to § 1981 claims against Defendant RHD and a possible Title VII claim by Plaintiff Sandra White. This Court is satisfied that Plaintiffs have sufficiently pled facts to establish a prima facie case under § 1981 against RHD. Therefore, Defendants' Motion for a More Definite Statement will be denied.

An appropriate order follows.

### ORDER

AND NOW, this 31st day of January, 1994, upon consideration of Defendants' Motion to Dismiss the Plaintiff's Complaint or, in the Alternative, for a More Definite Statement, it is hereby ORDERED that the Motion to Dismiss is GRANTED IN PART and DENIED IN PART and Counts IV, VI, VII and VIII and the claims raised under the Pennsylvania Constitution in Counts II and III of the Complaint are DISMISSED.

IT IS FURTHER ORDERED that Counts III and V are DISMISSED only as against Defendants Fishman and Moyer with leave to Plaintiff White to amend Count III as discussed in the foregoing Memorandum Opinion. Plaintiff Hicks' Title VII claim is DISMISSED from Count I of the complaint. In all other respects, the Motion to Dismiss is DENIED.

IT IS STILL FURTHER ORDERED that the defendants' Motion for a More Definite Statement is DENIED.